**Robert HARPER, Jr., Appellant,**

v.

**D. B. McDONALD, et al.**

No. 81–1568.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 8, 1982.
Decided June 8, 1982.

---

James P. Chandler, Washington, D. C., for appellant.

David P. Sutton, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D. C., were on the brief, for appellees.

Before WRIGHT and TAMM, Circuit Judges, and HOWARD T. MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals.

Opinion PER CURIAM.

* Sitting by designation pursuant to 28 U.S.C.

**PER CURIAM:**

Appellant Robert Harper, Jr., brought suit in the United States District Court for the District of Columbia seeking damages for injuries allegedly suffered as a result of his false arrest and imprisonment by officers of the Metropolitan Police Department of the District of Columbia (MPD). Claiming that his rights under the Fourth, Fifth, and Sixth Amendments had been violated, appellant asserted jurisdiction under 28 U.S.C.A. § 1331 (West Supp.1982). The district court dismissed the suit for want of jurisdiction on the ground that it presented no actionable claim of constitutional dimension. Since appellant's complaint seeks recovery directly under the Constitution, and his claims are neither "wholly insubstantial" nor "frivolous," we hold that the district court does possess jurisdiction over this action. Accordingly, we reverse and remand for further proceedings.

## I. BACKGROUND

Appellant's complaint alleges that on the evening of September 15, 1979, while eating dinner at a Washington restaurant, he was approached by uniformed members of the MPD and asked to present identification. Although Harper displayed his National Broadcasting Company employee identification card, the officers, allegedly without probable cause or a warrant, ordered him to accompany them to the home of a burglary victim since he "fitted the description" of the culprit. Harper protested his innocence, stating that he had been at work all evening and was presently on his break. Nevertheless, allegedly through implied force and over his objections, Harper was required to accompany the police to the victim's home. Thereafter the officers allegedly forced Harper "to abandon his vehicle, subjected him to [an] unlawful search, and forced him to accompany them to Police Headquarters [where he] was unlawfully arrested, imprisoned and detained with-

out bail for several hours all without warrant and probable cause or any lawful cause whatsoever." Plaintiff's Second Amended Complaint at ¶ 11, *Harper v. McDonald*, 512 F.Supp. 368 (D.D.C.1981); Appellant's Appendix (A.A.) at 4–5. The complaint further contends that although Harper "demanded to be released and notified of the criminal charges against him, his demands were ignored. No charges were ever preferred against [him] in support of the arrest, search and seizure and imprisonment . . . ." *Id.* at ¶ 12; A.A. at 5.

Harper sued the District of Columbia, the Chief of Police, Officer D. B. McDonald, and four unnamed police officers on the ground that the actions of the policemen deprived him of rights secured by the United States Constitution.[1] Jurisdiction was asserted under 28 U.S.C. § 1331, which empowers district courts to hear "all civil actions arising under the Constitution, laws, or treaties of the United States."[2] 28 U.S. C.A. § 1331 (West Supp.1982). The defendants—appellees here—moved for dismissal or, alternatively, for summary judgment. They argued that the district court lacked jurisdiction to hear the suit, that the police chief could not be held liable for the alleged tortious conduct of Officer McDonald, and that some of plaintiff's claims were barred due to failure to comply with the mandatory notice requirements of the D.C.Code.

The district court dismissed appellant's complaint, stating that it presented "no actionable claim of constitutional proportions" and that therefore there was no federal jurisdiction under section 1331. *Harper v. McDonald*, 512 F.Supp. 368, 371 (D.D.C. 1981). The district court believed that the complaint alleged no more than a tort claim based on a false arrest "that in no way shocks the conscience and for which review in a local court . . . is readily available." *Id.* at 370. The other issues raised in appellees' motions were not addressed by the district court.

## II. ANALYSIS

The sole issue on appeal is whether Harper's claims arise under the Constitution or laws of the United States so as to confer jurisdiction on the district court under section 1331. Harper alleges that he was arrested and subsequently detained without probable cause or a warrant in violation of, *inter alia*, his Fourth Amendment right to be free from unreasonable searches and seizures. The Supreme Court has held that a private cause of action exists for violation of Fourth Amendment rights. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[3] Ap-

---

1. Appellant's Second Amended Complaint alleges violations of the following constitutional rights:

 a. The right of plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth Amendment to the Constitution of the United States;

 b. The right of plaintiff to be informed of the nature and cause of the accusation against him, secured to him under the Sixth Amendment to the Constitution of the United States; and

 c. The right of plaintiff not to be deprived of life, liberty, or property without due process of law secured by the Fifth Amendment of the Constitution of the United States. Plaintiff's Second Amended Complaint at ¶ 15, *Harper v. McDonald*, 512 F.Supp. 368 (D.D.C. 1981); Appellant's Appendix (A.A.) at 5.

 Harper also asserted state law claims for tortious interference with contractual employment relationships, intentional infliction of mental anguish, and defamation of character. *Id.* at ¶¶ 17–22; A.A. at 6.

2. Jurisdiction was also asserted under 28 U.S.C. § 1332 (1976), the diversity of citizenship provision, and 28 U.S.C. § 1343 (1976), the civil rights provision. Plaintiff's Second Amended Complaint at ¶¶ 1–2, *Harper v. McDonald*, 512 F.Supp. 368 (D.D.C.1981); A.A. at 3. The district court denied the existence of jurisdiction under these sections, however, and its ruling in that regard is not contested on appeal. Thus, we have before us only the claim of section 1331 jurisdiction.

3. Although *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), involved unlawful conduct by federal agents, it appears to be applicable to the conduct of District of Columbia authorities as well. *See District of Columbia v. Carter*, 409 U.S. 418, 433, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973); *Apton v. Wilson*, 506 F.2d 83, 95–96 (D.C.Cir.1974).

pellees do not dispute that private suits may be brought to vindicate Fourth Amendment rights; they contend, however, that Harper's claims do not rise to the level of a constitutional deprivation and at most allege a common law tort. They argue that "not every local law tort becomes a constitutional tort simply because it is committed by a government official, even though it results in a loss of personal liberty." Brief for Appellees at 6.

 It is true, of course, that a violation of local law cannot "be transformed into a constitutional tort at the whim of a plaintiff simply because it was committed by a governmental agent under color of official authority." *Payne v. Government of the District of Columbia*, 559 F.2d 809, 829 (D.C.Cir.1977) (Tamm, J., concurring). It is equally clear, however, that the fact that Harper might be entitled to relief under state law does not deprive him of the right to a federal forum if he is otherwise entitled to one. In *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), the premier case on federal question jurisdiction, petitioners claimed that FBI agents had searched their homes, seized their papers, and incarcerated them in violation of the Fourth and Fifth Amendments. The suit was dismissed by the district court for lack of jurisdiction. The court of appeals affirmed, and the Supreme Court reversed. The *Bell* Court rejected respondents' argument—similar to the one made by appellees here—that because petitioners' complaint stated a cause of action for the common law tort of trespass made actionable by state law, it did not raise questions arising under the Constitution or laws of the United States. The Court stated that where the

complaint is clearly drawn to seek recovery directly under the Constitution or laws of the United States, the district court must entertain the suit. *Id.* at 681–82, 66 S.Ct. at 775–76. In this sense, "'the party who brings a suit is master to decide what law he will rely upon ....'" *Id.* at 681, 66 S.Ct. at 775 (quoting *The Fair v. Kohler Die Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913)).

The Court noted two situations in which an action alleging a constitutional deprivation or federal statutory claim may be dismissed for want of jurisdiction: "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* 327 U.S. at 682–83, 66 S.Ct. at 776. Throughout the years the Supreme Court has enunciated several tests for determining whether a claim meets the threshold requirement of substantiality. The Court has held that federal courts are without jurisdiction to entertain claims that are "so attenuated and unsubstantial as to be absolutely devoid of merit," claims that raise issues that are "no longer open to discussion" because of prior decisions of the Supreme Court, and claims that are "essentially fictitious." *See Hagans v. Lavine*, 415 U.S. 528, 536–38, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974),[4] and cases cited therein. We believe that "[t]he standard for want of 'substantiality' is a stringent one, and 'if there is any foundation of plausibility to the claim [then] federal jurisdiction exists.'" *Payne*, 559 F.2d at 823 (Tamm, J., concurring) (quoting 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3564, at 428 (1976)).[5]

---

4. Although *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), was an action brought under 42 U.S.C. § 1983 (1976), its pronouncements on the substantiality issue are equally applicable in the context of a section 1331 action.

5. Appellants in *Payne v. Government of the District of Columbia*, 559 F.2d 809 (D.C.Cir. 1977), alleged that a District of Columbia police officer willfully and maliciously fired his service revolver at them as they sat in their car.

Asserting an infringement of rights secured by the Fourth, Fifth, and Sixth Amendments, appellants sought to invoke the district court's jurisdiction under section 1331. The district court held that the suit was a mere tort action for assault and that appellants had alleged no circumstances which raised their claims to a constitutional dimension sufficient to confer jurisdiction on a federal court. Thus, the action was dismissed for lack of subject matter jurisdiction. This court reversed. *Id.* at 813.

Appellees rely on *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), and *Sami v. United States*, 617 F.2d 755 (D.C.Cir.1979), to support the argument that Harper's claims are not of constitutional magnitude. This reliance is misplaced, however, as both decisions are distinguishable from the instant case. In *Baker*, the respondent brought an action under 42 U.S.C. § 1983 (1976), claiming that his arrest and erroneous detention for eight days deprived him of liberty without due process of law. The Supreme Court, in rejecting this challenge, did indeed state that "[j]ust as '[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner,' false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official." *Baker*, 443 U.S. at 146, 99 S.Ct. at 2696 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)). The key factor in the Court's decision in *Baker*, however, was that respondent had been arrested pursuant to a *facially valid warrant*:

> Absent an attack on the validity of the warrant under which he was arrested, respondent's complaint is simply that despite his protests of mistaken identity, he was detained in ... jail .... Whatever claims this situation might give rise to under state tort law, we think it gives rise to no claim under the United States Constitution. Respondent was indeed deprived of his liberty for a period of days, but it was *pursuant to a warrant conforming*, for purposes of our decision, *to*

the requirements of the Fourth Amendment.

*Id.* 443 U.S. at 143–44, 99 S.Ct. at 2694 (emphasis added). In the case at bar, appellant alleges that his arrest without a warrant or probable cause was invalid under the Fourth Amendment and therefore rendered his imprisonment a deprivation of liberty without due process of law. This is precisely the type of allegation that was missing in *Baker*.

In *Sami*, the plaintiff asserted, *inter alia*, constitutional tort claims for false arrest and imprisonment by German officials on the basis of a communique sent by a United States federal official. In concluding that "no actionable claims of constitutional proportions" were presented, this court observed that "[e]rroneous or wrongful loss of liberty does not *ipso facto* amount to a constitutional violation." *Sami*, 617 F.2d at 773. Taken out of context, this statement appears to support appellees' position. Central to the decision in *Sami*, however, was the fact that appellant there failed to allege a deprivation of any specific substantive right. The court observed that Sami did not argue "in the traditional sense" that there was no probable cause for his arrest. *Id.* Rather, he argued that there was no probable cause that an *extraditable* offense was committed. *Id.* Noting that "there was ample probable cause for a domestic arrest," *id.* at 774, this court upheld the dismissal of Sami's constitutional claims.[6]

Under appellees' reading of *Sami* and *Baker*, federal jurisdiction is triggered only

**6.** The court stated that it could not agree "that the fourth amendment necessarily prohibits arrests which are on probable cause but which may not be extraditable under the applicable treaty." *Sami v. United States*, 617 F.2d 755, 773 (D.C.Cir.1979).

It should be noted that the district court in *Sami* held that it had jurisdiction over the constitutional claims asserted by the plaintiff. *Sami v. United States*, Civ. No. 76–507 (D.D.C. Oct. 19, 1977), Memorandum at 2. When the district court ultimately dismissed the constitutional claims as to defendant Sims, it made a ruling on the merits, granting summary judgment in favor of Sims. *Sami v. United States*, Civ.No. 76–507 (D.D.C. July 22, 1978), Memorandum and Order. In the section of this

court's *Sami* opinion relied upon by appellees here, the court affirmed the district court's dismissal of the constitutional claims against Sims and the attendant grant of summary judgment. The affirmance was based, however, on the "independent" ground that the facts alleged presented no actionable constitutional claims. *Sami*, 617 F.2d at 770, 772. It is unclear from the opinion whether the court was suggesting that the district court never had jurisdiction over the constitutional claims, or whether it was holding that Sami had failed to state a claim upon which relief could be granted—a ruling on the merits. We suspect it was the latter, and, if so, the *Sami* decision is even less helpful to appellees in the instant context.

when the defendants have engaged in "aggravated lawless conduct" that requires federal supervision. Brief for Appellees at 6. They contend that "[i]n the absence of conduct sufficiently egregious to be constitutionally tortious, the matter is exclusively for the local courts." *Id.* The *Sami* court, relying on *Baker*, did indicate that such factors as egregious and pervasive conduct and a need for federal supervision should be considered in determining whether a claim based on local law may also be brought under the Constitution. *Sami*, 617 F.2d at 773–74. It did not suggest, however, that there is any de minimis level below which a search and seizure, undertaken without probable cause or a warrant, is not a constitutional violation. In the instant case there was no warrant, and it is alleged that there was no probable cause for requiring Harper to accompany police to the burglary victim's home for identification. Accepting the allegations of the complaint as true, as we must on the motion to dismiss, appellant has made a prima facie *Bivens* case.[7] The authorities cited by appellees are not to the contrary.

Appellees argue further that case law makes it "abundantly clear that facts short of probable cause, constituting 'articulable suspicion' of criminal conduct . . . justify a temporary restraint of liberty for showup purposes." Brief for Appellees at 9. We disagree. It is questionable whether what Harper experienced was a mere "temporary restraint of liberty." This is not, according to Harper, a case where police detained appellant briefly to ask a few questions. The officers, allegedly through coercion, required Harper to accompany them to a location some six blocks away for a showup. As this court has recently noted, "[t]he law is unsettled concerning the point at which a 'stop' ripens into a detention that requires probable cause." *Gomez v. Turner*, 672 F.2d 134, 139 n.9 (D.C.Cir.1982). Thus, this action does present substantial federal questions—including whether probable cause was required for Harper's detention and, if so, whether it existed—that must be examined by the district court after it assumes jurisdiction of this action.

■ It may be that one or more of Harper's averments fails to state a claim upon which he can recover, but it is well settled that "failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Bell*, 327 U.S. at 682, 66 S.Ct. at 776. *Accord, Payne*, 559 F.2d at 816 (Opinion of Robinson, J.); *id.* at 829 (Tamm, J., concurring). In this case, as in *Bell* and *Payne*, the district court must assume jurisdiction to decide whether the allegations state a claim upon which relief can be granted.

### III. CONCLUSION

Appellant's complaint seeks recovery directly under the Constitution, and we do not believe that his claims are "wholly insubstantial," "frivolous," or "absolutely devoid of merit." We therefore hold that jurisdiction to adjudicate these claims exists in the district court, and we reverse and remand for further proceedings.

*It is so ordered.*