Dexter M. McDONALD, Plaintiff,

v.

James H. DUNNING, et al., Defendants.

Civ. A. No. 90–691–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

March 25, 1991.

Watson, Constance W. Rosenberg & Watson, Alexandria, Va., for Dexter M. McDonald.

John J. Brandt, Robert S. Corish, Slenker, Brandt, Jennings & Johnston, Fairfax, Va., for James H. Dunning, Sheriff.

Jack L. Gould, Thomas O. Lawson, Lawson, Kipp & Forbes, Fairfax, Va., for Edward Semonian, Clerk.

## MEMORANDUM OPINION

ELLIS, District Judge.

### Introduction

In this unusual case, a series of errors by local and state officials led to the mistaken

arrest and jailing of plaintiff for failure to appear to serve a sentence he had in fact already served. The question presented by defendants' summary judgment motions is whether the errors are intentional acts of constitutional magnitude so as to support plaintiff's § 1983 claims. Specifically, plaintiff asserts § 1983 claims against the clerk of the court which issued a stale warrant and the sheriff of the jail in which plaintiff was incarcerated. Against the clerk, plaintiff alleges responsibility for issuing an arrest warrant three years late, failure to schedule plaintiff for a court appearance after plaintiff's arrest, and failure to respond to a letter requesting a hearing sent by the plaintiff from jail to the clerk, all violating plaintiff's right not to be deprived of liberty without due process of law.[1] Against the sheriff, plaintiff alleges that he was wrongfully seized and that he was arrested and incarcerated without being brought before a magistrate, that he was not informed of the charges against him, and that he was denied his right to counsel, all in violation of his rights secured by the Fourth, Sixth, and Fourteenth Amendments.[2] Because the Court finds that the claims against the clerk amount, at best, to negligence, the claims against him are dismissed. By contrast, the allegations and current record are sufficient to avoid summary judgment on the § 1983 claim against the sheriff.

### Facts

On June 1, 1983, plaintiff pled guilty to petty larceny in the Circuit Court for the City of Alexandria. He received a one-year sentence, which was suspended except for ninety days to be served in the Alexandria Detention Center (the "ADC"). Plaintiff was ordered to return to court on June 14th to begin serving the sentence. On the appointed day plaintiff failed to appear. Instead, unbeknownst to the court, plaintiff voluntarily reported the next day to the ADC where he served his sentence.[3]

When plaintiff failed to appear in court on June 14, 1983, the state judge ordered the issuance of a bench warrant for plaintiff's arrest. Defendant Semonian, the clerk of the court, received the order and transferred it, as was the practice, to the Commonwealth's Attorney's Office for preparation of a warrant. For reasons not disclosed in the record, that office failed to prepare a warrant until January 1987, more than three years after the judge ordered preparation of the warrant. At that time, the warrant was returned to the court, which issued it on January 30, 1987. In short, the warrant for plaintiff's arrest issued more than three years after plaintiff had failed to appear in court and, in any event, after plaintiff had served the sentence imposed upon him.

Shortly after his release from the ADC in 1983, plaintiff moved to Georgia. He returned to Virginia in 1987. Of course, plaintiff was unaware of the outstanding warrant for his arrest. Some two years later, on September 5, 1989, plaintiff was stopped by the Fairfax County Police who were conducting a routine spot-check for valid County vehicle stickers. A police officer conducted a computer check of plaintiff's license, which revealed the outstanding Alexandria warrant for plaintiff's arrest. Plaintiff was arrested and transferred from the Fairfax County police to the Alexandria police, who took him to the ADC. There, police first searched plaintiff, then brought him to a magistrate at the ADC. The magistrate signed a form at approximately 9:00 p.m. committing plaintiff to the ADC.

---

**1.** The plaintiff also asserts pendent state claims of false imprisonment and intentional infliction of emotional distress against the clerk.

**2.** Plaintiff also alleges pendent state claims for false imprisonment and intentional infliction of emotional distress against the sheriff. The latter claim was previously dismissed pursuant to Rule 12(b)(6), Fed.R.Civ.P. *See Womack v. Eldridge,* 215 Va. 338, 210 S.E.2d 145, 148 (1974)

(absent physical injury, alleged wrongdoer must have "specific purpose of inflicting emotional distress"); *accord Ely v. Whitlock,* 238 Va. 670, 385 S.E.2d 893, 897–98 (1989); *Ruth v. Fletcher,* 237 Va. 366, 377 S.E.2d 412, 413 (1989).

**3.** Plaintiff served sixty days and was given credit for thirty additional days on the basis of good behavior.

The warrant under which plaintiff was arrested specified that plaintiff was to be brought to court to answer the charge alleged in the warrant. It further authorized plaintiff's bail in the form of release on recognizance with surety, or cash in lieu thereof, of $1,000. Furthermore, the commitment form completed by the magistrate at the jail the night plaintiff was booked commanded that plaintiff be taken to court the next morning.

The next morning, an Alexandria deputy sheriff called the Deputy Commonwealth's Attorney for the City of Alexandria regarding whether plaintiff should be taken to court. The deputy sheriff was advised that since plaintiff had been arrested for failure to appear to serve a sentence, he should be held to serve that sentence without a hearing. This was done. Plaintiff was not taken to court or before any further magistrates.

A total of twenty-one days passed during which plaintiff was incarcerated. Plaintiff alleges that during this time he repeatedly asked officers why he had been arrested and incarcerated, and why he had not been taken before a judge or released on bail. He contends that the officers responded by saying they did not know. During the twenty-one days, plaintiff was never brought before a magistrate or judge to be advised of the reasons for his arrest or for consideration of bail, although bail was authorized on the arrest warrant. After twenty-one days, a police officer discovered that plaintiff had already served his sentence in 1983, and plaintiff was then released.

Plaintiff alleges that as a result of his arrest and incarceration, he lost his job and has been unable to find employment offering the equivalent salary and benefits. Moreover, lack of income stemming from plaintiff's incarceration allegedly forced plaintiff's wife, who was unable to support their family on her own, to leave her part-time job and move with their children to her parents' home in Georgia. Plaintiff further alleges that he continues to suffer financial harm stemming from his twenty-one-day incarceration.

### Analysis

Summary judgment standards are well settled. "A motion for summary judgment must be granted if 'there is no genuine issue as to any material fact' and 'the moving party is entitled to a judgment as a matter of law.'" *Davis v. Thoman Motel Corp.*, 900 F.2d 28, 31 (4th Cir.1990), quoting Rule 56(c), Fed.R.Civ.P.; *accord Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990); *De Leon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1233 (4th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 87, 107 L.Ed.2d 52 (1989). "Such a burden may be met by use of 'affidavits, exhibits, depositions, and other discovery materials.'" *Pachaly*, 897 F.2d at 725, quoting *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). The party opposing summary judgment is entitled to have the evidence of record and all reasonable inferences read in its favor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Pachaly*, 897 F.2d at 725 n. 3. But, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Below, the Court first reviews the standards for holding an official liable in either their individual or official capacity for a § 1983 violation. It then applies these standards to the allegations and existing record against the clerk and the sheriff.

### I.

Section 1983 imposes civil liability on one who, under color of State law, deprives any citizen of the United States or other person under the jurisdiction thereof of any right secured by the Constitution or laws of the United States.[4] An initial inquiry, then, in

---

**4.** Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage,

any § 1983 action is whether a defendant acted under color of state law. A second preliminary inquiry is "whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). If the answer to either inquiry is "no," the § 1983 action fails. *See id.*

■■■ Even if both questions can be answered affirmatively, further analysis is required to determine whether damages may be recovered for a § 1983 claim. Whether an official is liable for damages in a § 1983 action depends on whether the official is being sued in his or her official or individual capacity:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.... Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." ... As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.... It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978)) (citations and footnote omitted). Whether an official is sued in her or his individual or official capacity determines what showing must be made. "On the merits, to establish *personal* liability in a

§ 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky*, 473 U.S. at 166, 105 S.Ct. at 3105; *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In other words, suits against officials in their individual capacity cannot succeed absent proof of some degree of personal involvement in the alleged deprivation of rights. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928–29 (4th Cir.1977); *Bennett v. Gravelle*, 323 F.Supp. 203, 214 (D.Md.), *aff'd* 451 F.2d 1011 (4th Cir.1971), *cert. denied*, 407 U.S. 917, 92 S.Ct. 2451, 32 L.Ed.2d 692 (1972). It is not enough in this respect to show that subordinates of a sued official were the actors; the doctrine of respondeat superior has no application in § 1983 cases. *See Monell*, 436 U.S. at 691–92, 98 S.Ct. at 2036. A different showing is required in an official-capacity suit. In such suits "the entity's 'policy or custom' must have played a part in the violation of federal law." *Kentucky*, 473 U.S. at 166, 105 S.Ct. at 3105 (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (municipal liability may also be established by showing lack of training indicating deliberate indifference to constitutional rights). In other words, official liability turns on whether there exists a policy or widespread practice actually or constructively known by policymakers that is itself unconstitutional or is "affirmatively linked" to an alleged constitutional violation. *Spell v. McDaniel*, 824 F.2d 1380, 1385–90 (4th Cir.1987), *cert. denied, City of Fayetteville v. Spell*, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988).

Liability defenses also differ depending on whether officials are sued in their personal or official capacities. An official sued in her personal capacity may "assert personal immunity defenses, such as objectively reasonable reliance on existing law." *Kentucky*, 473 U.S. at 166–67, 105 S.Ct. at

---

of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen or the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immuni-

ties secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

3105; *see Imbler v. Pachman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (absolute immunity); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (qualified immunity). "In an official-capacity action, these defenses are unavailable." *Kentucky*, 473 U.S. at 167, 105 S.Ct. at 3106; *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Only forms of sovereign immunity, such as the Eleventh Amendment, may be claimed in an official capacity action. *See Kentucky*, 473 U.S. at 167, 105 S.Ct. at 3106. The nature of the suit also affects the type of damages that may be obtained. *See Newport v. Facts Concert, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (punitive damages may not be awarded against municipality found liable in § 1983 action); *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985) (recognizing that decision in *Newport* bars punitive damages in suit against official sued in official capacity).

In sum, analyzing a claim for damages under § 1983 requires answering four questions: (1) was the objectionable act taken under color of state law, (2) were plaintiff's federal constitutional or statutory rights violated, (3) if suit is not directly against a municipality, is plaintiff suing an official in their personal or in their official capacity, and (4) if suit is against an official in their individual capacity, can applicable claims of immunity, such as qualified immunity, be overcome, or if suit is against a municipality or an official in their official capacity, can the violation of rights be attributable to policy, custom, or lack of training. These questions along with the standards for summary judgment will now be applied to the motions of the clerk and sheriff.

## A. *The Clerk*

The parties do not dispute that the clerk was acting under color of state law when he took the actions challenged by plaintiff. Hence, the first requirement for a § 1983 action is satisfied. However, plaintiff's claim against the clerk fails the second requirement—that evidence of a violation of federal constitutional or statutory rights be shown. Plaintiff's only claims against the clerk are that (1) the clerk somehow contributed to the three-and-one-half year delay in issuance of the bench warrant for plaintiff's arrest, (2) the clerk should have scheduled plaintiff for a court appearance after plaintiff's arrest in September 1989, and (3) the clerk did not respond to a letter mailed to the clerk by plaintiff from the ADC, requesting a hearing to determine why plaintiff had been imprisoned. With respect to the first claim, the record indicates that bench warrants were prepared for the Circuit Court of the City of Alexandria by the Commonwealth's Attorney's office. It was this office that delayed preparing and returning the bench warrant to the Circuit Court for over three years. Hence, the clerk had no involvement in the delay. Moreover, this delay stemmed at most from negligence, and not from the requisite "*deliberate* decision of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (holding that "[w]here a government official's act causing injury to life, liberty, or property is merely negligent, 'no procedure for compensation is *constitutionally* required'"), quoting *Parratt v. Taylor*, 451 U.S. 527, 548, 101 S.Ct. 1908, 1919, 68 L.Ed.2d 420 (Powell, J., concurring); *see Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Wadhams v. Procunier*, 772 F.2d 75 (4th Cir.1985).

With respect to the second claim, affidavits submitted by the clerk establish that hearings for persons arrested under bench warrants for failure to appear to serve a sentence were held at the time of plaintiff's arrest in the General District Court for the City of Alexandria, not the Circuit Court of which defendant was clerk. The record, which plaintiff has not successfully disputed, shows that the clerk was not responsible for scheduling such a hearing for plaintiff. Finally, the motion requesting a hearing which plaintiff sent to the clerk arrived at the clerk's office one day *after* plaintiff was released, and requested a

hearing for September 28, 1989, a date two days after plaintiff was actually released. It cannot be said that McDonald was damaged in any way by a failure of the clerk to respond to this motion. For these reasons, the § 1983 claim against the clerk should be dismissed with prejudice, and the remaining pendent state claims dismissed without prejudice. *See Revene v. Charles County Comm'rs,* 882 F.2d 870, 875 (4th Cir.1989) (where § 1983 claim was dismissed against one of several defendants, state law claims against that defendant should be dismissed without prejudice).

### B. *The Sheriff*

As with the clerk, the parties do not dispute that the acts alleged to have been taken by the sheriff or his deputies were taken under color of state law. They do dispute whether plaintiff's claims and the record are sufficient to avoid summary judgment on the issue of whether a constitutional violation occurred.

### 1. *Evidence of a Constitutional Violation*

■ Plaintiff contends first that the manner of his arrest violated his Fourth Amendment right against unreasonable searches and seizures. But plaintiff also concedes that the warrant under which he was arrested, though untimely, was nonetheless valid. As a valid warrant, it established that there was probable cause to believe plaintiff had committed the act charged and that plaintiff should be arrested and held to answer the charge. *See Baker v. McCollan,* 443 U.S. at 142–43, 99

S.Ct. at 2693–94;[5] *accord Clark v. Link,* 855 F.2d 156, 166 (4th Cir.1988). Consequently, the record cannot support a claim of unlawful arrest in violation of the Fourth Amendment. *See Baker,* 443 U.S. at 143–44, 99 S.Ct. at 2694.

Plaintiff's second claim, as stated in his complaint, is that he was denied assistance of counsel in violation of the Sixth Amendment as applied to the States through the Fourteenth Amendment. In his response to the sheriff's motion for summary judgment, plaintiff clarified his claim. He does not contend that he was denied access to an attorney while incarcerated. Rather, his claim is more subtle. He argues that the failure to take him before a judicial officer violated a right to be informed by such officer of his right to assistance of counsel. Even so, this claim assumes a Sixth Amendment right to counsel at a hearing concerning the charge that he had failed to appear to serve his sentence. This is doubtful. First, plaintiff had no right to *appointed* counsel at a hearing, the purpose of which was not to prosecute plaintiff for failure to appear, but to determine whether plaintiff had in fact not served his sentence. *See Scott v. Illinois,* 440 U.S. 367, 373–74, 99 S.Ct. 1158, 1161–62, 59 L.Ed.2d 383 (1979) (holding that counsel must be provided only in criminal *prosecutions* which result in a defendant being sentenced to a term of imprisonment);[6] *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (holding that appointed counsel need not be provided in parole or probation revocation proceedings because such do not constitute *prosecu-*

---

**5.** In *Baker,* the Supreme Court stated:

> By virtue of its "incorporation" into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). The probable-cause determination "must be made by a judicial officer either before or promptly after arrest." *Id.,* at 125, 95 S.Ct. at 869. Since an adversary hearing is not required, and since the probable cause standard for pretrial detention is the same as that for arrest, a person arrested pursuant to a warrant issued by a magistrate on a showing of probable-cause is

not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial.

443 U.S. at 142–43, 99 S.Ct. at 2693–94 (footnotes omitted).

**6.** The Supreme Court stated:

> We therefore hold that the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense.

*Scott,* 440 U.S. at 373–74, 99 S.Ct. at 1161–62.

*tions*). While plaintiff has a right to obtain his own counsel to represent him in a civil or criminal matter, a denial of that right violates the Due Process Clause, not the Sixth Amendment. *See Chandler v. Fretag,* 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954) (holding that denying defendant an opportunity to obtain counsel on habitual criminal charge violated due process); *Powell v. Alabama,* 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932) ("[i]f in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by … him, … such a refusal would be a denial of a hearing, and, therefore, of due process"). In the instant case, plaintiff was not denied the right to retain counsel, but may instead have been denied a hearing altogether. The assistance of counsel claim is subsumed under plaintiff's principal claim of deprivation of liberty without due process, to which the Court now turns.

Plaintiff maintains that he was deprived of liberty without due process of law in violation of the Fourteenth Amendment's Due Process Clause. Specifically, he contends he was arrested and incarcerated by Alexandria police with the aim of imprisoning him for ninety days without plaintiff ever having been brought before a judicial officer for purposes of informing him of the charge against him, determining if such charge were true, or determining whether plaintiff should be released on bail. The Alexandria sheriff's deputies, acting in concert with the Commonwealth's Attorney, allegedly determined, on their own, that the warrant's allegations were true, namely that plaintiff had in fact failed to appear and to serve his sentence.

These allegations on their face state a constitutional violation. The Supreme Court has recognized that the Constitution prohibits the arrest and imprisonment of free citizens, even those under sentence of conviction for a crime, without adherence at least to minimal requirements of due process. *See, e.g., Morrissey v. Brewer,* 408 U.S. 471, 480–84, 92 S.Ct. 2593, 2599–601, 33 L.Ed.2d 484 (1972) (holding that parolee may not be arrested and imprisoned for alleged parole violations absent adherence to due process requirements); *Gagnon v. Scarpelli,* 411 U.S. 778, 781–83, 93 S.Ct. 1756, 1759–60, 36 L.Ed.2d 656 (1973) (holding the same with respect to probationers). In *Morrissey,* for example, the Supreme Court declared that "the liberty" of a parolee, though a "conditional liberty" and not "the absolute liberty to which every citizen is entitled," 408 U.S. at 480, 92 S.Ct. at 2600, "is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal." 408 U.S. at 482, 92 S.Ct. at 2601. Courts have long recognized that due process requires, at a minimum, an opportunity to respond to the charges against one and to do so before a neutral decisionmaker.[7] Here, plaintiff alleges that he was incarcerated without even the minimal due process safeguards of being

---

7. *Morrissey v. Brewer,* 408 U.S. at 488–89, 92 S.Ct. at 2603–04 (minimum requirements of due process include "opportunity to be heard in person" and a "neutral and detached" hearing body); *id.* at 499, 92 S.Ct. at 2609 (Douglas, J., dissenting) (" '[n]otice and opportunity for hearing appropriate to the nature of the case', *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, are the rudiments of due process which restore faith that our society is run for the many, not the few, and that fair dealing rather than caprice will govern the affairs of men"); *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (" 'the root requirement' of the Due Process clause" is " 'that an individual be given a hearing *before* he is deprived of any significant property interest' "; hearing required before termination of employment) (em-

phasis in original), quoting *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971); *Parham v. J.R.,* 442 U.S. 584, 606–07, 99 S.Ct. 2493, 2506, 61 L.Ed.2d 101 (1979) (determination by neutral physician whether statutory admission standard is met required before confinement of child in mental hospital); *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975) (at minimum, due process requires "*some* kind of notice and … *some* kind of hearing" (emphasis in original); informal hearing required for suspension of students from public school); *see Jones v. Rivers,* 338 F.2d 862, 877 (4th Cir.1964) (observing that it "is commonly accepted in our system of jurisprudence, that there is inherent danger in combining the functions of judge and advocate").

informed of the charges against him and appearing before a magistrate or judge. If true, the allegations constitute a violation of plaintiff's Fourteenth Amendment right not to be deprived of liberty without due process of law.[8]

The defendant sheriff argues that plaintiff was brought before a magistrate before he was incarcerated. While technically true, the record suggests that this appearance did not satisfy minimal Due Process Clause requirements. On the evening of his arrest, plaintiff was brought before a window in the ADC behind which was a night magistrate. This magistrate apparently did nothing beyond signing a form committing plaintiff to jail. The magistrate apparently did not inform plaintiff of the charge against him, did not determine whether the charge in the warrant was valid, and did not determine whether plaintiff could be released on bail. Nor did he order that plaintiff be incarcerated to serve his previously imposed sentence.[9] On the contrary, it seems clear that the night magistrate left all this for a hearing the next day, for on the commitment form itself, the magistrate stated that plaintiff was to be taken the next day at 9:00 A.M. for a hearing before the Circuit Court of Alexandria.[10] The form further stated:

TO THE SHERIFF OR JAILOR:

You are hereby commanded to take custody of and safely keep the person named above in accordance with the appropriate instructions on the back of this card.

The appropriate instructions on the back of the form read:

If the prisoner is committed to jail:

PENDING HEARING—Hold the prisoner in custody pending such hearing, and convey the prisoner to the appropriate court so that the prisoner be present in court at the time and date shown, unless

---

**8.** Although it is not relevant to determining whether a constitutional violation has occurred, the Court notes that plaintiff's allegations, if true, also show that police officers violated Virginia law as well. Virginia Code § 19.2–80 states in relevant part: "an officer making an arrest under a warrant or capias shall bring the arrested person without unnecessary delay before ... a court of appropriate jurisdiction of the county or city in which the warrant or capias is issued, or before an official having authority to grant bail."

**9.** Although not necessary to the analysis here, it is worth noting that plaintiff's appearance before the night magistrate apparently did not constitute the "advisement hearing" required by Virginia law for all persons arrested under a warrant or capias. *See* Va.Code § 19.2–80. There is also evidence that the procedure followed by the sheriff's deputies violated the normal practices of the Alexandria courts. The state judge's affidavit avers that the term "advisement hearing" is used to describe the hearing before a judicial officer required by Virginia Code § 19.2–80. At the time of McDonald's arrest, these hearings were held in the General District Court for the City of Alexandria. This further supports the proposition that the proceedings before the night magistrate did not constitute the "advisement hearing" contemplated by § 19.2–80.

The action before the magistrate also does not appear to have been a "first appearance" or "arraignment on the warrant." Most states have statutes similar to Virginia Code § 19.2–80 that require a prompt appearance of arrested persons, whether arrested pursuant to a warrant or not, before a judicial officer. *See* A.L.I., *Model Code of Pre–Arraignment Procedure* 577–79, Appendix I (1975). A first appearance usually takes place within hours of an arrest and after a complaint or other charging instrument has been filed by prosecuting officers with the magistrate court. At this point, the arrestee is a formal defendant, and "if the magistrate court does not have an evening session, a person arrested in the afternoon or evening will not be presented before the magistrate until the next day." W. LaFave & J. Israel, *Criminal Procedure* § 1.4(h) (1984). Often, the first appearance is quite brief and, although the elements vary from state to state, typically consists of a judge or magistrate (1) ensuring that the person before him is the person named in the complaint, (2) informing the defendant of the charge in the complaint, (3) informing the defendant of his right to remain silent, (4) informing defendant of his right to appointed counsel if he is indigent, and (5) setting bail. *See id.; Coleman v. Frantz*, 754 F.2d 719, 721 n. 1 (7th Cir.1985).

**10.** As noted in the preceding footnote, the state judge's affidavit indicates that although the arrest warrant was issued by the Circuit Court of the City of Alexandria, and although the commitment form directed that plaintiff be taken to the Circuit Court, the standard practice prevailing at the time was for "the General District Court of the City of Alexandria to hold all advisement hearings ... regardless of which court had issued the warrant authorizing such arrest."

the prisoner be previously released by law.

Thus, the magistrate himself apparently did not view what transpired before him as sufficient to incarcerate plaintiff to serve his sentence. Moreover, although subject to dispute, the current record, when viewed in the light most favorable to plaintiff, suggests that plaintiff was not informed of the charge against him during his encounter with the night magistrate.[11] The current record suggests that the only action taken by the magistrate was a determination that plaintiff should not immediately be released that evening on "station house bail," that is, "by posting cash as a security payment and promising to appear before a magistrate at a specified date." W. La-Fave & J. Israel, *Criminal Procedure* § 1.4(d) at 16 (1984). The record does not indicate that the magistrate made a determination about whether plaintiff should ultimately be released on bail.[12] This bail determination, along with informing plaintiff of the charge and testing the validity of the charge, apparently awaited the next morning's hearing. And, of course, the

uncontradicted record discloses that the sheriff's deputies, at the direction of the Commonwealth's Attorney, did not produce plaintiff for this anticipated morning hearing. Thus, there are disputed issues of fact which if resolved in plaintiff's favor would support a finding that plaintiff was denied the minimal constitutional due process rights of being informed of the charge against him and of having a judicial officer determine the validity of that charge before plaintiff was incarcerated. Moreover, if it is shown that the actions before the magistrate did not constitute the bail hearing mandated by Virginia Code § 19.2–80, then defendant's deputies' failure to take plaintiff to court the morning following his arrest constituted arbitrary action denying plaintiff due process rights pertaining to bail.[13] Thus, material facts pertaining to whether plaintiff's constitutional due process rights were violated are either disputed or favor plaintiff.

■ The sheriff argues that no cognizable constitutional tort occurred in this case because plaintiff was arrested pursuant to

11. The sheriff maintains that plaintiff was informed of the charges against him when the arresting officer read the warrant to him and when he received a copy of the warrant at the jail. But, as already noted, the warrant simply states that plaintiff is to "answer A CHARGE alleging that he failed to appear to serve a sentence previously imposed by this Court." The record suggests that at no time during his arrest and incarceration was plaintiff informed that he had been arrested for failure to appear in June 1983 or that the sentence previously imposed was for petty larceny committed in 1983. Significantly, the night magistrate's affidavit does not state that plaintiff was informed of the charges against him at that time or that the magistrate made a determination that plaintiff had in fact failed to appear to serve his 1983 sentence.

12. The original warrant states that bail could be granted in the form of recognizance with surety or $1,000 in lieu thereof. The commitment form completed by the magistrate has one space entitled "BOND (IF APPLICABLE) $_____" and a second space to check if the prisoner is "NOT ELIGIBLE FOR BAIL." In the first space the magistrate typed "Hold" and he left the second space blank. This suggests that the magistrate determined only that plaintiff should not be released on bond that evening and left the matter of bail for the next morning's hearing.

13. *See Finetti v. Harris,* 609 F.2d 594, 599 (2d Cir.1979) ("while there is no absolute federal constitutional right to bail pending appeal, once a state makes provision for such bail, the Eighth and Fourteenth Amendments require that it not be denied arbitrarily"); *Young v. Hubbard,* 673 F.2d 132, 134 (5th Cir.1982) (same); *Brown v. Wilmot,* 572 F.2d 404 (2d Cir.1978) (same); *United States ex rel. Walker v. Twomey,* 484 F.2d 874, 875 (7th Cir.1973) (arbitrary denial of bail provided for by state law pending appeal violates Fourteenth Amendment); *Atkins v. Michigan,* 644 F.2d 543, 550 (6th Cir.1981) (where Michigan Court Rules required that lower court's grant of bail remain in effect absent finding an abuse of discretion, review court's cancellation of bond without explanation "constitutes arbitrary denial of ... fundamental interest in liberty pending trial and therefore violated [plaintiff's] right to due process of law"), *cert. denied,* 452 U.S. 964, 101 S.Ct. 3115, 69 L.Ed.2d 975 (1982); *Kelly v. Springett,* 527 F.2d 1090, 1093 (9th Cir.1975) ("an accused has a Fourteenth Amendment due process right to have a state's bail system administered without caprice or discrimination"); *Garton v. Marsteller,* 545 F.Supp. 994, 997 (D.Kan.1982); *United States ex rel. Rainwater v. Morris,* 411 F.Supp. 1252 (N.D.Ill.1976) (finding that record failed to provide rational basis for denial of bail pending appeal).

a valid arrest warrant. He relies on *Baker v. McCollan*, 443 U.S. 137, 142, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433 (1979), a case pertaining to pretrial detention. But *Baker* and other pretrial detention cases, to the extent relevant to this case,[14] support the conclusion that an actionable constitutional tort occurred here. In *Baker*, plaintiff's brother was booked on a narcotics charge and gave police, for identification, a duplicate of plaintiff's driver's license. Plaintiff was subsequently arrested pursuant to a valid warrant and held for three days, over a New Year's weekend, despite his claims of mistaken identity, until police discovered that they had arrested the wrong individual. The Supreme Court held that no violation of due process had been shown because, although plaintiff had been deprived of liberty for three days, "it was pursuant to a warrant conforming ... to the requirements of the Fourth Amendment." *Id.* at 144, 99 S.Ct. at 2694. In a concurrence, Justice Blackmun added that no showing had been made that the sheriff of the jail where plaintiff was held was aware either of plaintiff's claims of misidentification or that procedures instituted for making photo comparison checks of prisoners' identifications were ineffective or not followed. *Id.* at 147–48, 99 S.Ct. at 2696. But the Court further held that a more extended pretrial detention, in the face of repeated protests of innocence, would violate the constitutional guarantee of a speedy trial and might constitute a deprivation of liberty without due process:

> Obviously, one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment. For the Constitution likewise guarantees an accused the right to a speedy trial, and

invocation of the speedy trial right need not await indictment or other formal charge; arrest pursuant to probable cause is itself sufficient.... We may even assume, *arguendo*, that, depending on what procedure the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty ... without due process of law." But we are quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation.

*Id.* at 144–45, 99 S.Ct. at 2694–95 (citations and footnotes omitted).

Since the issuance of *Baker*, at least two circuits, including the Fourth, have held that a lengthy pretrial detention, though initiated under a valid arrest warrant, may give rise to a constitutional violation. *See Coleman v. Frantz*, 754 F.2d 719 (7th Cir. 1985); *Patton v. Przybylski*, 822 F.2d 697 (7th Cir.1987); *Clark v. Link*, 855 F.2d 156 (4th Cir.1988). *Coleman v. Frantz* bears some resemblance to the facts of the instant case. There, the plaintiff was arrested pursuant to a valid warrant for allegedly receiving stolen property. Bond was set in the warrant at $10,000. Upon arrest, plaintiff was incarcerated for inability to post the bond, and the warrant was returned to the appropriate court, notifying it of plaintiff's status. Plaintiff was then held for eighteen days, after which he was released by the defendant sheriff at the direction of the prosecuting attorney's office. During the eighteen days, plaintiff asked the sheriff several times when he was going to court and protested his innocence. "In turn the Sheriff repeatedly

---

**14.** While there are similarities between the facts of this case and those found in *Baker* and other pretrial detention cases which make the holdings in the latter relevant, there is also an important difference. In *Baker* and similar cases, the plaintiffs were held awaiting either a preliminary hearing or a trial. Law enforcement officers intended to bring them before a judicial officer at some time to determine the validity of the charges against them. Here, plaintiff was

not detained to await further judicial proceedings, but was incarcerated without an appearance before a judicial officer and without any intention on the part of the sheriff's deputies to obtain such an appearance. Arguably, therefore, the actions of officials here constitute a clearer violation of due process than the actions of the officers in *Baker* and other pretrial detention cases who only delayed in bringing an arrested person before a judicial officer.

called the prosecutor's office to arrange for [plaintiff's] 'first appearance,' but did not receive a reply or any action until ... the date the prosecutor told him to release plaintiff." All three judges in *Coleman* agreed that "plaintiff's eighteen-day detention without an appearance before a judge or magistrate was a deprivation of liberty without due process of law."[15] Two judges held that the sheriff's duty to take an incarcerated defendant before a magistrate for a first appearance within a reasonable amount of time was clearly established by 1981, the time of the arrest; one disagreed, finding the issue to be one of first impression. *Id.* at 723. One, however, also found that the sheriff had done all he could to fulfill his duty to obtain a first appearance, and that, prior to *Coleman* itself, a sheriff's duty to release a prisoner if the prosecutor refused to cooperate in arranging a first appearance had not been firmly established. As of the date of *Coleman,* however, there was "no longer ... any doubt about this aspect of the duty" as well. 754 F.2d at 731 (Cudahy, J., concurring). The holding in *Coleman* has been reaffirmed by the Seventh Circuit in subsequent opinions indicating that a sheriff has a duty to investigate claims of innocence and bring an incarcerated defendant before a magistrate.[16]

More recently, the Fourth Circuit again recognized that the length of time an individual is detained under a valid warrant implicates constitutional due process rights. In *Clark v. Link,* 855 F.2d 156 (4th Cir.1987), plaintiff contended that a three-hour delay in fixing bail allegedly caused by the actions of police officers and a magistrate violated his constitutional rights. The Fourth Circuit noted the distinction

between warrantless arrests, after which any "extended restraint of liberty" pending a judicial determination of probable cause for arrest must be "brief," and arrests pursuant to facially valid warrants. With respect to the latter, the Fourth Circuit stated that the Supreme Court's opinion in *Baker v. McCollan* established "the rule as to when a detention under a facially valid arrest warrant is so great as to amount to a constitutional violation...." *Id.* at 166. The panel recognized that whether such a violation has occurred depends on the length of time of incarceration and surrounding circumstances. It concluded that "[i]f three days [were] not sufficient under [the] circumstances [in Baker] to support a due process violation, a mere three hours' delay such as here will not qualify." *Id.*

The Court concludes that the decisions of the Supreme Court in *Baker,* the Fourth Circuit in *Clark,* and the Seventh Circuit in *Coleman, Patton,* and similar cases, establish that a sheriff or his deputy, faced with the prolonged pretrial detention of a prisoner held pursuant to a facially valid arrest warrant, has a duty to investigate the prisoner's claims of innocence and to arrange a first appearance before a judicial officer or eventually release the prisoner. Here, the constitutional violation alleged is more severe. As noted, defendant's deputies allegedly acquiesced to plaintiff's incarceration for an intended ninety-days without an appearance before a magistrate. Thus, plaintiff was reduced from being a free citizen to a prison inmate without an appearance before a judicial officer to determine the validity of the charges in the warrant. Given these circumstances, the presence of a valid arrest warrant cannot excuse the failure to provide a first hearing.

---

**15.** 754 F.2d at 723; *id.* at 731 (Cudahy, J., concurring); *id.* (Gordon, J. dissenting) ("I agree with the majority's conclusion that a constitutional violation occurs when a presumptively innocent person is incarcerated by the sheriff for 18 days without being taken before a judicial officer for an initial appearance").

**16.** *See Patton v. Przybylski,* 822 F.2d at 700–01 (to allow an innocent person to "languish in jail for almost a week ... over his vigorous protest that he is the wrong man ... without either investigating the case or bringing him before a

magistrate raises serious constitutional questions, under the Fourth Amendment if the arrest was improper or under the due process clause if the arrest was proper and the complaint is that the arrested person, having been deprived of his liberty by being incarcerated, was denied due process"); *Bergren v. City of Milwaukee,* 811 F.2d 1139, 1143 (7th Cir.1987) ("[t]he right to arrest a suspect does not, of course, give the state the right to hold him for any length of time or under any conditions").

■ The sheriff's remaining defense to the § 1983 claim is the alleged existence of an adequate state tort remedy for plaintiff. The contention is meritless. Defendant relies on *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). There, the Supreme Court held, *first,* that plaintiff's claim that prison officials had negligently failed to follow existing prison mail processing procedures thereby depriving plaintiff of a hobby kit stated a claim of deprivation of property cognizable under the Fourteenth Amendment. But, significantly, there was a *second* holding, namely that certain post-deprivation tort proceedings provided by the state constituted all the legal process due plaintiff for the negligent deprivation alleged, and hence plaintiff had not been denied due process. The first holding in *Parratt* has been reversed. *Daniels v. Williams,* 474 U.S. at 330–31, 106 S.Ct. at 664–65. *Daniels* teaches that a merely negligent "deprivation" of life, liberty, or property, is not the type of "deprivation" contemplated by the Fourteenth Amendment. Given *Daniel's* elimination of purely negligent acts from due process consideration, *Parratt's* second holding continues to enjoy only limited application, as, for example, in cases of random intentional torts not in any manner authorized by a state. *See Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (holding that where prison official intentionally destroyed prisoner's property as part of "random, unauthorized personal vendetta against prisoner," state post-deprivation proceedings constituted adequate due process); *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 985, 108 L.Ed.2d 100 (1990) (reaffirming *Hudson*). *Parratt's* holding that state post-deprivation remedies may constitute adequate due process for deprivations that otherwise would violate the Due Process Clause has relevance only where the sole claim is violation of *procedural* due process. *Parratt* does not apply where there are claims that rights in the Bill of Rights incorporated in the Due Process Clause were violated or that "substantive" due process rights [17] were violated. "A plaintiff … may invoke § 1983 regardless of any state-tort remedy that might be available to compensate him for the deprivation of these rights." *Zinermon v. Burch,* 110 S.Ct. at 983. Furthermore, even where the sole claim is one of deprivation of *procedural* due process rights, the key "inquiry under *Parratt* is 'whether the *state* is in a position to provide for predeprivation process.'" *Zinermon,* 110 S.Ct. at 985–86, quoting *Hudson v. Palmer,* 468 U.S. at 534, 104 S.Ct. at 3204. *Parratt* applies only where the deprivation was "unpredictable" and "unauthorized," rendering "predeprivation process 'impossible.'" *Id.,* 110 S.Ct. at 989–90. Here, the deprivation alleged was authorized, intentional rather than negligent, and easily remedied by constitutionally required pre-deprivation procedures. *Parratt* is thus inapplicable here; plaintiff's claims were properly brought under § 1983.

### 2. *Evidence of Policy, Custom or Lack of Training*

In the instant action the complaint and pleadings do not indicate on their face whether suit is brought against the defendant sheriff in his individual or official capacity.[18] The bulk of the arguments raised by both plaintiff and defendant in their pleadings concern whether the sheriff instituted a policy or custom that caused the alleged violations. Hence, the Court concludes that the course of the proceedings before it indicate that this suit is one against the sheriff in his official capacity. *Cf. Brandon v. Holt,* 469 U.S. at 471, 105 S.Ct. at 877 (finding that the course of proceedings justified permitting plaintiffs to amend their complaint at the *certiorari*

---

**17.** The Due Process Clause contains a "substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch,* 110 S.Ct. at 983, quoting *Daniels v. Williams,* 474 U.S. at 331, 106 S.Ct. at 665. *See, e.g., Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (stomach pumping).

**18.** The complaint states that it is against "James H. Dunning, Sheriff." It is thus ambiguous as to the capacity in which defendant is being sued.

stage to clarify that official was sued in official capacity; no prejudice resulted). Here, the defendant has been aware throughout pretrial proceedings that claims of a "policy or custom" were at issue, and the City of Alexandria has been aware of this suit and these claims since the suit's inception.[19]

Because plaintiff has presented no evidence of the sheriff's personal involvement in the alleged violations, and the sheriff has averred that he had no knowledge of plaintiff's incarceration, the suit may not proceed against the defendant sheriff in his individual capacity. "No other basis of liability [than official capacity] exists for holding the sheriff separately liable on the claim as pleaded because no claim is made that he was directly involved in [plaintiff's incarceration], and there is no vicarious liability under § 1983." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 874 (4th Cir.1989) (holding that where sheriff was not *directly involved* in deputy's pursuit and shooting of plaintiff's husband, sheriff could only be sued in his official capacity).[20]

Plaintiff nevertheless contends that the sheriff may be held personally liable for the § 1983 violations of his deputies without showing direct involvement on his part. They rely on cases holding that where state law automatically renders a sheriff liable on his bond [21] for the negligence of his deputies, the sheriff may be held vicariously liable for the § 1983 constitutional torts of his deputies. *See Scott v. Vandiver*, 476 F.2d 238 (4th Cir.1973); *Whited v. Fields*, 581 F.Supp. 1444 (W.D. Va.1984) (stating same in dicta in context of holding that newly elected sheriff could constitutionally replace deputies of outgoing sheriff). But the holdings in *Scott v. Vandiver* and similar early cases [22] have been undercut by the Supreme Court's subsequent holding in *Monell v. Department of Social Services*, 436 U.S. at 691–92, 98 S.Ct. at 2036, rejecting vicarious liability as a theory of recovery under § 1983. This conclusion is strengthened by subsequent Fourth Circuit decisions holding that no vicarious liability of sheriffs exists under § 1983,[23] by decisions from other jurisdic-

---

**19.** The City of Alexandria was an original defendant in this suit but was voluntarily dismissed from the suit by plaintiff.

**20.** *See Kentucky v. Graham*, 473 U.S. at 165, 105 S.Ct. at 3105 ("[p]ersonal capacity suits seek to impose personal liability upon a government official for actions *he takes* under color of state law") (emphasis added); *id.* at 166, 105 S.Ct. at 3105 ("to establish *personal* liability ... it is enough to show that the official ... caused the deprivation"); *Fisher v. Washington Metro. Transit Auth.*, 690 F.2d 1133, 1142 (4th Cir.1982) (upholding dismissal of claim against county sheriff where there was "no evidence that [sheriff] participated directly in any of the events of [plaintiff's] detention"); *Vinnedge v. Gibbs*, 550 F.2d 926, 928–29 (4th Cir.1977); *Bennett v. Gravelle*, 323 F.Supp. 203, 214 (D.Md.) ("[l]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under [§ 1983].... To be liable under this section, plaintiffs must prove that the defendants directed or personally participated in the deprivation of plaintiffs' rights. Only personal involvement is contemplated by this section"), *aff'd* 451 F.2d 1011 (4th Cir.1971), *cert. denied* 407 U.S. 917, 92 S.Ct. 2451, 32 L.Ed.2d 692 (1972).

**21.** In Virginia a sheriff is held vicariously liable for the negligent torts of his deputies only on a statutorily required bond. *See, e.g.,* 16 Michie's

Jurisprudence, *Sheriffs*, § 27 at 592 (1987) ("A sheriff is liable civiliter, but not criminaliter, for all the acts of his deputy colore officii and is liable therefore in the same form of action as if they had been actually committed by himself"); *id.,* § 28 at 594 ("A sheriff is not personally liable for the acts of the deputy of such sheriff done colore officii, but he and his sureties are liable on his official bond, as the default or misfeasance of a deputy is a breach of the conditions of the sheriff's official bond. However, *malfeasance* is not such a breach") (footnotes omitted); *see also First Virginia Bank—Colonial v. Baker*, 225 Va. 72, 301 S.E.2d 8 (1983) (holding clerk of county court liable on public bond for misfeasance of deputy clerk); Va.Code §§ 15.1–41, 15.1–42.1.

**22.** *See, e.g., Tuley v. Heyd*, 482 F.2d 590 (5th Cir.1973) (state law may render official vicariously liable under § 1983); *Hesselgesser v. Reilly*, 440 F.2d 901 (9th Cir.1971) (same); *Lewis v. Brautigam*, 227 F.2d 124 (5th Cir.1955).

**23.** *See Revene v. Charles County Comm'rs*, 882 F.2d at 874 (sheriff not personally liable under § 1983 unless "directly involved" in shooting death); *Fisher v. Washington Metro. Transit Auth.*, 690 F.2d at 1142 (county sheriff "cannot be held liable vicariously under § 1983 for any conduct of his subordinates"); *see also Vinnedge v. Gibbs*, 550 F.2d at 928 (failure to allege "per-

tions explicitly criticizing the reasoning of *Scott v. Vandiver*,[24] and by a Fifth Circuit opinion explicitly overruling prior decisions of that Circuit similar to *Scott*.[25] The sheriff in his individual capacity may not be held vicariously liable under § 1983 for the constitutional torts of subordinates in which he was not directly involved. And, of course, he may not be held liable in his official capacity under § 1983 for such acts absent a showing that the deprivation of rights occurred pursuant to an official policy or custom or from deficient training. In sum, the record is devoid of allegations and facts sufficient to hold the sheriff liable in his individual capacity.

It is otherwise with respect to his official capacity. The plaintiff argues that the defendant is responsible for a "policy," "custom or usage," or lack of training and supervision that caused the violations at issue.[26] Official or municipal liability "results only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury.'" *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir.1987) (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037). Such liability may also arise from a failure to train that "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 109 S.Ct. at 1204. As the defendant sheriff is responsible for the choice of practices and procedures within the ADC, his acts and omissions represent official policy. *See Spell v. McDaniel*, 824 F.2d at 1387; *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir.1983) (delegation of law enforcement policymaking to police chief assumed). *Spell v. McDaniel* teaches that official liability may be based on "custom or usage" in the sense of "persistent and widespread ... practic-

es" by municipal agents or employees "when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge" by a municipal policymaker. 824 F.2d at 1387. "Constructive knowledge may be inferred from the widespread extent of the practices, general knowledge of their existence, manifest opportunities and official duty of responsible policymakers to be informed, or combinations of these." *Id.* at 1391. A causal link must also be shown between a custom or usage and a violation. It may be satisfied by showing either that the custom "is itself unconstitutional," *id.* at 1387, or that there is an "affirmative link" between the custom and the violation such as to make the specific violation "almost bound to happen, sooner or later." *Id.* at 1388, 1391. Liability may, of course, also be based on a policy of those, such as the sheriff, whose edicts represent official policy. Again, the required causal link between policy and violation is established if the policy is itself unconstitutional or if it is affirmatively linked to the specific violation. *Id.* at 1387–88.

■ The current record contains facts supporting a finding that the specific constitutional violations alleged resulted from a policy of defendant's or from a custom of which defendant was actually or constructively aware. The record indicates, at the least, that the Commonwealth's Attorney for the City of Alexandria had a policy of incarcerating persons arrested on a warrant for failure to appear to serve a sentence previously imposed without permitting such persons an appearance before a judicial officer:

> Whenever I was asked about whether a defendant arrested on a bench warrant for failure to appear to begin serving a previously-imposed sentence should be brought to the Court, my response would

---

sonal connection" between state administrator and denial of rights fatal to claim against administrator).

**24.** *See, e.g., Marks v. Lyon County Bd. of County Comm'rs*, 590 F.Supp. 1129 (D.Kan.1984); *Knipp v. Weikle*, 405 F.Supp. 782 (N.D.Ohio 1975).

**25.** *See Baskin v. Parker*, 602 F.2d 1205 (5th Cir. 1979) (holding that, in light of *Monell*, state cannot render sheriff vicariously liable and overruling several contrary Fifth Circuit opinions).

**26.** *See* Complaint ¶ 23; Plaintiff's Motion in Opposition to the Motion for Summary Judgment of Defendant James H. Dunning at 10–11.

be that the individual should not be brought to the court but should instead be held until the sentence was served.[27] This same statement indicates that officers in defendant's control on more than one occasion, acting on the Commonwealth's Attorney's advice, incarcerated persons similarly situated to plaintiff without arranging for a first hearing before a magistrate. At trial, the extent of this practice or custom will presumably be revealed, and it may be shown to have been actually or constructively known by defendant. The custom itself appears to deprive a citizen of liberty without due process, as allegedly occurred in this case. Furthermore, as plaintiff alleges in his opposition to summary judgment, this custom appears to have been encouraged by a policy of defendant's simply to defer to the Commonwealth's Attorney with respect to whether a prisoner should be brought before a magistrate or court. Defendant has not denied plaintiff's claim that he had such a policy. Rather, defendant maintains that "if the Commonwealth's Attorney determines not to present a prisoner to the Court, it certainly is not the obligation of the Sheriff to do so."[28] Hence, defendant appears to lay claim to a policy of permitting arrestees to be imprisoned for extended periods without attempting to bring such persons before a judicial officer or releasing them if the Commonwealth's Attorney does not direct that such persons be brought to court. Such a policy ignores the sheriff's independent duty, separate and distinct from the Commonwealth's Attorney's, to protect the due process rights of arrested persons in his control. *See Coleman v. Frantz,* 754 F.2d at 731 (Cudahy, J., concurring) (sheriff must obtain first appearance or release prisoner). The alleged policy is violative of constitutional rights or, at least, "affirmatively linked" to the specific violations alleged. The Court concludes that the record reveals disputed factual issues that, if resolved by a jury in favor of plaintiff, would support plaintiff's § 1983 claims against the sheriff in his official capacity.[29]

### Conclusion

In sum, the § 1983 claim against the clerk must be dismissed with prejudice while the pendent state law claims against the clerk are dismissed without prejudice. Summary judgment for the sheriff on the § 1983 claim is not warranted. The remaining false imprisonment pendent state claim against the sheriff is therefore also retained for trial. An appropriate order has entered.

---

**27.** Affidavit of the Deputy Commonwealth's Attorney for the City of Alexandria at 2–3.

**28.** Memorandum in Support of Defendant Dunning's Motion for Summary Judgment at 7. Defendant argues that this policy is justified because "under Virginia law it is the Commonwealth's Attorney who prosecutes, not the Sheriff." *Id.; see* Va.Code § 15.1–8.1 (stating that the attorney for the Commonwealth "shall have the duty ... of prosecuting all warrants, indictments, or informations charging felony and he may in his discretion, prosecute Class 1, 2, and 3 misdemeanors ..."). This argument is unpersuasive. First, state law may not authorize violations of the federal Constitution. Second, the fact that Virginia law authorizes the Commonwealth's Attorney to prosecute felonies does not lead to the conclusion that it also authorizes sheriffs to hold arrested persons indefinitely without taking them before a judicial officer. In fact, Virginia law appears to mandate that arresting officers bring detainees before judicial officers.

**29.** As the § 1983 count against the defendant sheriff remains, the Court retains jurisdiction over the pendent state law claim of false imprisonment against the sheriff. *See Revene v. Charles County Comm'rs,* 882 F.2d at 875.